## NATIONAL CARBON CO., Inc., v. WESTERN SHADE CLOTH CO.
### No. 6232.

Circuit Court of Appeals, Seventh Circuit.
Nov. 30, 1937.
Rehearing Denied Jan. 7, 1938.

Albert J. Fihe, of Chicago, Ill., and William H. Davis, Charles W. Riley, and Ambrose A. Arnold, all of New York City, for appellant.

Leonard A. Watson and Clair V. Johnson, both of New York City, and George A. Chritton and Chritton, Wiles, Davies, Hirschl & Dawson, all of Chicago, Ill., and Watson, Bristol, Johnson & Leavenworth, of New York City, for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellant seeks to reverse a decree finding valid and infringed claims 14, 15 and 17 of patent 1,497,543 and claims 9, 11 and 12 of patent 1,497,544, originally granted to Chaney, June 10, 1924.

In each patent the inventor described and claimed, in claims not in suit herein, the process of producing absorbent carbons or charcoals possessing to a desired degree certain qualities. The claims relied on, appearing in the footnote,[1] are for the resulting product, the only difference between the two patents being that in one the product is described as adsorbent carbon and in the other as nut charcoal. For the purpose of this discussion, the two patents may be considered identical, for in this case carbon and its preferred form, cocoanut charcoal, are the same thing.

Charcoal as carbon possesses the inherent power to adsorb gases and vapors; that is, to cause molecules of another substance to be attracted and adhere to its surface. As a consequence charcoal has been employed as an adsorbent agent in many practical ways, such as abatement or adsorption of stenches and odoriferous gases, filtering, drying, and decolorization. The specific process and product claimed by Chaney arose out of the exigencies of the government in the World War and resulted in an invention of the proper material to be used in gas masks to absorb poison gases.

In his specifications Chaney recited the history of these qualities of charcoal; commented that certain of the class have greater capacity than others in the respects mentioned, and pointed out that charcoal prepared from certain nuts, such as the shell of the cocoanut, has generally a higher adsorptive capacity than that originating from other material. He said, further, that for certain desired purposes such charcoal is incapable of effective use, because it does not possess sufficient adsorbent power and alleged that he had discovered a method by which such capacity might be greatly increased. The deficiency which he encountered in cocoanut charcoal, affecting its adsorbent qualities, arose, he said, from the fact that the carbon retains hydrocarbons, evolved during carbonization, whose presence decreases the adsorbent capacity. He described his method of removing the hydrocarbons, leaving the active part of the carbon substantially intact. He subjected ordinary charcoal, the preferred form being cocoanut charcoal, to a current of steam or carbon dioxide, or mixtures thereof, at carefully controlled temperatures, preferably lying between 800 and 1000 degrees C., this process being continued until the hydrocarbons were eliminated. He suggested that gaseous chlorine might be used, preferably with steam, and that air might be employed, but at decidedly lower temperatures and with less satisfactory results. He announced further that the adsorbent power of such charcoal might be still fur-

---

[1] Patent 1,497,543, claim 14—As a new article of manufacture, adsorptive carbon having a retentive value for chlorpicrin in excess of 20% of its weight. Claim 15—As a new article of manufacture, adsorptive carbon having a retentive value for chlorpicrin of approximately 40% of its weight. Claim 17—As a new article of manufacture, adsorptive carbon having an adsorbent life in excess of 225 minutes on test comprising passing a stream of air containing one part per thousand of chlorpicrin through a layer of 8-10 mesh carbon ten centimeters deep, in sufficient quantities to pass five hundred cubic centimeters of the gas mixture per minute through one square centimeter of surface of the carbon layer, until the effluent gas mixture imparts a distinct coloration to a copper flame.

Patent 1,497,544, claim 9—As a new article of manufacture, nut charcoal having an adsorbent life in excess of 225 minutes on test comprising passing a stream of air containing one part per thousand of chlorpicrin through a layer of 8-10 mesh carbon ten centimeters deep, in sufficient quantities to pass five hundred cubic centimeters of the gas mixture per minute through one square centimeter of surface of the carbon layer, until the effluent gas mixture imparts a distinct coloration to a copper flame. Claim 11—As a new article of manufacture, nut charcoal having a retentive value for chlorpicrin in excess of 20% of its weight. Claim 12—As a new article of manufacture, nut charcoal having a retentive value for chlorpicrin of approximately 40% of its weight.

ther increased by increasing the ratio of its exposed surface to its volume. This he accomplished by creating channels in the surface of the particles of carbon by subjecting them, after they had been freed from hydrocarbons, to a current of steam or other gaseous oxidizing agent, preferably at a temperature of 800 or 1000 degrees C., continuing the application until the apparent density of the charcoal had fallen to a value lying between 0.5 and 1.0 and preferably until the apparent density approximated the value of 0.66. The latter, he says, is the most desirable density value for adsorbent carbon. The charcoal prepared in this manner was found to be more powerful in capacity for adsorbing gases than any previously available.

He described his process of accomplishing this high degree adsorptive power, setting out the results obtained by subjecting the resulting article to three different tests for measuring the power: (1) The service life test; (2) the retentivity test; and (3) the modified retentivity test. All these he described in detail and, as a result, he proved, he said, that charcoal produced by his method has a service life in excess of 225 minutes and a retentive value for chlorpicrin in excess of 20 per cent. of its weight and, when made under the most desirable conditions, a retentive value of approximately 40 per cent. of its weight.

Following this description, the patentee made his claims, which fall into three groups. The first are those which distinguish the patentee's charcoal from others by defining it in terms of the process by which it is produced. The second are those which differentiate his product from others by defining its origin, treatment, physical form and characteristics, such as, that it is carbon substantially free of adsorbed hydrocarbons and inactive carbon and having a block density within the range previously mentioned. The third are the claims in suit. The latter, it will be noticed, claim an invention, first, of an article, the adsorptive power of which has a retentive value for chlorpicrin in excess of 20 per cent. of its weight; second, of a similar article having such retentive value of approximately 40 per cent. of its weight, and, third, a similar product having a service life in excess of 225 minutes. The claims not in suit specifically define the process and claim it and the resulting product. The claims before us are of such character as to cover any and all form of carbon and charcoal capable of adsorbing gases in a degree equal to that stated in the claims, without limitation as to the physical characteristics or method of manufacture of the same.

The appellant insisted in the District Court, and now reiterates, that such claims are void under the act of Congress defining the requisites of claims, because they are not limited to what the patentee described but cover any product endowed with the qualities of retentive power or service life claimed to be that of what he did discover and describe; that such claims are for the function, result, or effect of the real invention, and therefore void.

Each of the parties finds consolation in Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 48 S.Ct. 474, 72 L.Ed. 868. Each insists that the language there is decisive of the exact question here presented. Each consumes many pages to convince us of the righteousness of its interpretation of the decision.

■ In this situation it appears advisable, if not necessary, to advert to some elementary principles. Specifications of the patent, including the description and the claims, constitute a contract between the public and the patentee, under which the public, through the government, agrees that, in consideration of the inventor's disclosure of his teaching and his grant of the right to use the same after his monopoly expires, he shall be protected in his exclusive use during the life of the patent. The object is to place the patent fully within the knowledge of the public; to define the actual creation the public has undertaken to protect. It is the part of the claims to define the exact boundaries beyond which no member of the public may pass without invading the exclusive rights of the patentee. The claim ordinarily expressly or impliedly embraces the descriptive matter, but it may not include claim for something which is not fully made known to the world in the description, something which is not taught by the patentee in relating just what he has done. A manufactured article may be claimed as a new product, but this claim of the product must set forth its essential characteristics and qualities or define it as the product resulting from a described process and, if the character of the product depends upon the manner in which it has been produced, ordinarily, it should be claimed only as the thing produced by the specific proc-

ess. It has been said that a claim for a product produced by any process which will produce a like result covers the product only when made by equivalent processes. Pickhardt v. Packard (C.C.) 22 F. 530. Thus, in a claim for a composition of matter, a product, a statement of the elements, the mode of production and, perhaps, the essential qualities of the resulting article, constitute a clearly defined claim. But such a claim covers only the product resulting from use of the same or equivalent ingredients.

Passing now to Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 48 S. Ct. 474, 478, 72 L.Ed. 868, as to the meaning of which the parties have so greatly disagreed, we find that the court had to do with Perkins' patent on glue. Perkins had made a real invention by describing and claiming the process and the specific product resulting therefrom, clearly defining his ingredients and the method by which he achieved his result; but he made certain other claims. He was working with a vegetable glue made from starch, as an efficient substitute for glue from animal sources. In claims held invalid, Perkins described the article, saying that it had substantially the properties of animal glue, such as greater fluidity, high elasticity and great tensile strength. The court held the claims invalid even though they defined the glue in the terms of the properties mentioned, because, the court said, the statement of the asserted properties was nothing more than an assertion of the function of what he had really accomplished, and concluded that, inasmuch as the claims covered all starch glue possessing the specified properties, without limitation to the specified ingredients and process described by Perkins and defined by him in his other claims, they were invalid. The claims held valid, the court said, constituted invention because therein the patentee described the product by describing its essential characteristic ingredients with particularity, indicating the range of water absorption and the degree of degeneration of the starch ingredient of his glue. The glue made of "this ingredient within the specified range was a new product. This was invention of a new composition of matter, and was the real contribution Perkins made to the art."

The court discussed the second groups of claims, wherein the scope of the patent was defined in terms of the use or func-

tion of the product itself. Concerning these, the court said: "Any glue made of a starch base, whatever its composition, water absorptiveness, or other properties, combined with three parts of water, as is animal glue used in veneering, and with alkali, which has substantially the properties of animal glue, or is as good as animal glue for use in the wood-working trades, is claimed as Perkins' glue. Thus the inventor who advances the art by discovery that a certain defined material may be combined in a product useful for certain purposes seeks to extend his monopoly to any product which may subsequently be made from materials not within any defined range described in the patent, but which is likewise useful for those purposes. * * * But an inventor may not describe a particular starch glue which will perform the function of animal glue and then claim all starch glues which have those functions, or even all starch glues made with three parts of water and alkali, since starch glues may be made with three parts of water and alkali that do not have those properties."

In the present case the product is defined solely in terms of the function of the product. The patentee claims merely an article which has a retentive value of not less than 20 per cent. and reaching preferably 40 per cent. and a life service of 225 minutes. Thus, to give effect to the claim, would be to grant monopoly upon any carbon, whatever its composition, its structure or the manner of its manufacture, which has the claimed adsorbent power.

Chaney's invention, as described and claimed in the claims not in suit, was the discovery of his defined type of carbon, treated in a specified manner, which did away with the hydrocarbon, and which, when treated further in a certain other specified manner, by increasing the surface of the particles, attained so much greater efficiency that it became a successful article in the adsorption of gases and vapors. But the claims sued on would extend his monopoly to all carbons or charcoals made by any method, treated in any manner, achieving a 20 per cent. retentivity or a service life of 225 minutes. The concluding paragraph of Mr. Justice Stone's opinion in Holland Furniture Co. v. Perkins Glue Co., supra, seems to us directly applicable. There the court said: "That the patentee may not by claiming a patent on

the result or function of a machine extend his patent to devices or mechanisms not described in the patent is well understood. * * * Respondent argues that this principle, applicable to machine patents, is inapplicable to a patent for the composition of matter which is always a result of a process and concededly is patentable as such, but the attempt to broaden product claims by describing the product exclusively in terms of its use or function is subject to the same vice as is the attempt to describe a patentable device or machine in terms of its function. As a description of the invention it is insufficient, and, if allowed, would extend the monopoly beyond the invention."

■ Chaney invented a particular form of carbon claimed in process claims and other claims not in suit. But he could not, as he attempted to do in the product claims in suit, by reciting the achieved effect of his specific article, obtain a monopoly upon any article that would produce an identical effect without regard to whether it was made as he made it or by a process substantially equivalent thereto. His monopoly can extend only to the invention specifically described by him. The claims are invalid.

The decree of the District Court is reversed, with directions to proceed in a manner consistent with this opinion.