PAECO, INC.

v.

APPLIED MOLDINGS, INC. and
Michael R. Sigal

v.

ARLEN REALTY & DEVELOPMENT
CORPORATION.

Civ. A. No. 71–1100.

United States District Court,
E. D. Pennsylvania.

Feb. 9, 1976.

James E. Siegel, New York City, for plaintiff.

Richard O. Church, Reading, Pa., William P. Cole, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This matter comes before the Court on defendants' motions, pursuant to Rules 52 and 59, F.R.Civ.P., for reconsideration, amendment and augmentation of our memorandum and order dated September 24, 1975, in which we rendered our post-trial findings of fact and conclusions of law in this protracted patent litigation. In brief, we found that Claims 1, 2 and 3 of the United States Letters Patent No. 3,561,181 were invalid for various reasons, including obvious-ness and anticipation, and further found that plaintiff had not discharged its absolute duty of candor in prosecuting its patent application before the Patent Office. We have now had the benefit of extensive and able briefs as well as oral argument on the motions. For the reasons which follow, we have concluded that defendants' motions must be granted in part and denied in part.

### The Fraud Issue

Defendants disagree with our findings and conclusions as to the proper characterization of plaintiff's conduct in connection with its patent application. Specifically, defendant argues that plaintiff's conduct, which we held to be best characterized as "inequitable" and "unfair", must be deemed "fraud" or "proscribed conduct" as that concept has been described in the Third Circuit. Consequently, they argue, the entire patent must be declared invalid on the ground of fraud alone, in addition to and apart from our findings of invalidity under 35 U.S.C. §§ 102 and 103.

The linchpin of defendants' position is that plaintiff's failure to apprise the Patent Examiner of the most pertinent prior art deprived the Examiner of the ability to fairly assess plaintiff's application. Relying upon *Monsanto Co. v. Rohm & Haas Co.*, 312 F.Supp. 778 (E.D. Pa.1970), *aff'd.* 456 F.2d 592 (3d Cir. 1972), *cert. denied* 407 U.S. 934, 92 S.Ct. 2463, 32 L.Ed.2d 817 (1974) and upon *In Re Multidistrict Litigation Involving Frost Patent*, 398 F.Supp. 1353 (D.Del. 1975), defendants contend that the failure to disclose to the Patent Office relevant and material prior art of which plaintiff, and only plaintiff, had knowledge, mandates a decree of invalidity of the entire patent. We have already found that the plaintiff did not disclose facts concerning its own activities in connection with articles on which the claims, in part, were based. Since we have found that some of these same articles constituted prior art, we modify our prior holding on the issue of materiality. These articles *were* material and rele-

vant to the statutory criteria of patentability.

On the other hand, we cannot agree with the defendants that they have proven clearly and convincingly the requisite element of intent on which a finding of "proscribed conduct" must be based. As stated by Judge Wright in *Frost*:

> " * * * in this Circuit, a misrepresentation which makes it 'impossible for the Patent Office fairly to assess [the] application against the prevailing statutory criteria', *Monsanto*, 456 F.2d 592, 600, will, *given the requisite intent*, lead to a finding of invalidity." [Footnote omitted] [Emphasis supplied]. 398 F.Supp. 1369.

This "requisite intent" was described as follows:

> "While *Monsanto* can be read as allowing 'innocent' misrepresentation to suffice as grounds for holding a patent invalid, the majority's opinion does not lend itself unequivocally to support of that view. In fact, the majority opinion, in addition to referring to 'willful' acts, expressly refers to the unclean hands doctrine as 'prevent[ing] a *wrongdoer* from enjoying the fruits of his transgression.' 456 F.2d 598, (emphasis added). *This Court thus reads Monsanto as sanctioning only willful misrepresentations which contain an element of wrongfulness.*" [Emphasis supplied]. *Id.* 1369.

In the footnote at 398 F.Supp. 1369, Judge Wright cited *Xerox Corp. v. Dennison Mfg. Corp.*, 322 F.Supp. 963 (S.D. N.Y.) as a leading case on the subject of intent, in which

> "Judge Mansfield convincingly rejects the notion that negligent material misstatements or negligent nondisclosures are sufficient to form the basis for the defense." *Id.* fn. 32

■ It is our conclusion, as it was stated in our September 24, 1975 opinion, that defendants never proved clearly and convincingly, as it was their burden, that plaintiff's conduct was the product of a deliberately calculated attempt to mislead the Patent Examiner, or a selective presentation of incomplete data which constituted misleading half-truths and untruths regarding matters essential to patentability. We are not justified, under the circumstances, of this case, in drawing an inference of willful, deliberate bad faith or even a reckless or wanton disregard of the facts in plaintiff's prosecution of the patent. *See e. g. Frost, supra.* The mere failure to cite prior art references, without more, does not automatically convert a good faith effort to obtain a patent into a deliberate, intentional withholding or a conscious concealment consistent with an intent to mislead the patent office. *See e. g. Xerox Corp. v. Dennison Mfg. Co., supra, Tokyo Shibaura Electric Co., Ltd. v. Zenith Radio Corp.*, 404 F.Supp. 547 (D.Del.1975); *Becton, Dickinson & Co. v. Sherwood Medical Industries*, 516 F.2d 514, 187 U.S.P.Q. 200 (5th Cir. 1975).

Defendants have cited cases decided on factual circumstances which are readily distinguishable and do not support the proposition that a finding of invalidity can be premised on an unintentional or inadvertent misstep. In *Frost*, for example, Judge Wright concluded that an inference of fraudulent intention was warranted where the applicants deliberately and intentionally distorted test results and misrepresented their own beliefs as to the efficacy of their own conclusions during a lengthy and complex patent prosecution which finally matured into a patent. In *Monsanto*, Judge Masterson similarly concluded that the applicant's decision to exclude adverse tests results from an affidavit submitted to the Patent Examiner was:

> " * * * intentionally and deliberately made to mislead the Patent Office into believing that 3, 4—DCPA had outstanding herbicidal value as compared to related compounds." 312 F.Supp. 778, 786.

His opinion is replete with references to "incomplete data, carefully and intentionally chosen", *Id.* 791; and the affidavit was "misleading, and was intended to

be misleading," *Id.*; *see also* Fn. 11 at 791:

"* * * there is sufficient evidence to prove that *Monsanto* intentionally omitted material facts and that it thereby intended to mislead the patent office."

In affirming, the Circuit Court held that under the "totality of the circumstances" —a lengthy prosecution history, including several rejections of a compound on which the patent finally issued, the deliberate omissions of crucial test data, and the failure of the applicant to advise the issuing examiner of the prior applications which were relevant—Monsanto's conduct amounted to "misrepresentation transgressing equitable standards of conduct owed the public by the applicant in return for its monopoly". 456 F.2d at 600. Both *Pfizer v. International Rectifier Corp.*, 186 U.S.P.Q. 511 (D.Minn. 1975) and *Timely Products Corp. v. Aaron Corp.*, 253 F.2d 288, 187 U.S.P.Q. 257 (2d Cir. 1975) involved deliberate, calculated concealments as well as misleading declarations which were crucial to the Patent Examiner's fair evaluation of the applications.

On the other hand, we are faced with a factual pattern in this case which is devoid of direct evidence of an intentional concealment or deliberate non-disclosure which stemmed from bad faith or a wrongful intention on the part of the applicant. The evidence showed that the prosecution was characterized by honorable intentions, even though, as a result of this Court's determinations, statutory invalidity stemmed from plaintiff's own activities. It is our conclusion that the applicant's absolute duty of candor does not preclude or deny the opportunity for the exercise of good faith judgments during the prosecution of the application. In *Tokyo, supra,* for example, the applicant failed to call to the Examiner's attention two relevant prior art references which eventually led to invalidity, but the Court refused to characterize this failure as fraud.

"A patent attorney has no absolute duty to perceive that which one skilled in the art would have perceived if left in a room to study a display of all the prior art. His duty is one of candor and this duty leaves room for the exercise of good faith judgment even if that judgment ultimately is held to be faulty." *Tokyo, supra,* 404 F.Supp. at 569.

*See also Xerox Corp. v. Dennison Mfg. Co., supra;* *Belton, Dickinson & Co. v. Sherwood Medical Industries, supra.*

Viewing the "totality of the circumstance" as we must under *Monsanto, supra,* we conclude that our holding on the issue of fraud is justified, and accordingly, defendants' motion to amend in this regard will be denied.

### Entire Patent—Invalidity

Defendants also urge that we declare the entire patent invalid, basing this contention on their related fraud argument. However, we will not amend our memorandum to so hold because our conclusions on the issue of fraud do not justify this result.

### Attorneys' Fees

Under 35 U.S.C. § 285 defendants argue that we should augment our order by finding that this is an "exceptional" case and, in the exercise of discretion, award to them attorneys' fees. While this issue has not been addressed heretofore, we feel that the appropriate considerations compel the conclusion that an award of reasonable attorneys' fees is justified. An "exceptional" case as contemplated by the statute is almost always found where the Court concludes that a fraud on the patent office had been perpetrated.

"The purpose of 35 U.S.C. § 285 is to prevent injustice in patent litigation and can be predicated upon fraud practiced upon the Patent Office or vexatious or unjustified litigation." *ADM v. Speedmaster Packaging Corp.,* 384 F.Supp. 1325, 1350 (D.N.J.1974), *aff'd.* 525 F.2d 662 (3d Cir. 1975)

The rationale is that an award of reasonable attorneys' fees is designed, not to punish, but to compensate the prevailing

party for monies which he might not have had to spend in the absence of the losing party's misconduct. *See Mueller Brass v. Reading Industries, Inc.*, 352 F.Supp. 1357, 1380–81, (E.D.Pa.1972), *aff'd.* 487 F.2d 1395 (3d Cir. 1973).

■ While we have concluded that plaintiff was not guilty of the "proscribed conduct" as described by Judge Wright in *Frost, supra*, we have found that plaintiff's conduct, measured under the "totality of the circumstances" was tainted with an element of unfairness or inequitableness. As stated in *Monolith Portland Midwest Co. v. Kaiser Aluminum and C. Corp.*, 407 F.2d 288, 294 (9th Cir. 1969):

"But conduct short of fraud and in excess of simple negligence is also an adequate foundation for deciding that a patent action is exceptional. Such conduct is a serious breach of the patentee's duty to the Patent Office. The party who succeeds in invalidating the unlawful patent performs a valuable public service. It is appropriate under such circumstances to reward the prevailing party by giving him attorneys fees for his efforts, and it is equally appropriate to penalize in the same measure the patentee who obtained the patent by his wrongdoing."

*See also Kahn v. Dynamics Corp. of America*, 508 F.2d 939, 945 (2d Cir. 1972), *cert. denied* 421 U.S. 930, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975). Accordingly, we hold that this is an "exceptional" case within the purview of § 285 because plaintiff's unfair conduct before the Patent Office eventually resulted in this litigation, and it would be "grossly unjust" to reward that conduct by denying attorneys' fees to the prevailing party.

*Claim 1—Publication under 35 U.S.C. § 102(b)*

■ In our memorandum and order of September 24, 1975, we held that the defendants failed to prove anticipation of Claim 1 under 35 U.S.C. § 102(b) by reason of publication more than one year prior to the date of the patent application. Having reconsidered defendants' arguments and the evidence in this regard, particularly defendants' Exhibit 49, however, we are now convinced that all the elements of Claim 1 were depicted in that advertising brochure. Accordingly, we will grant defendants' motion and hold that the subject matter of Claim 1 was disclosed in a printed publication more than one year prior to the date of the patent application, rendering Claim 1 invalid under § 102(b).

## ORDER

And now, this 9th day of February, 1976, upon consideration of defendants' motions to amend, augment and reconsider our Memorandum and Order of September 24, 1975, it is ordered that the motions are denied insofar as they request this Court to hold that:

(1) the patent in suit was fraudulently procured; and

(2) the entire patent is invalid.

It is further ordered that defendants' motions are granted in the following particulars:

(1) Claim 1 of Patent 3,561,181 is invalid under 35 U.S.C. § 102(a) and (b);

(2) Claims 2 and 3 of Patent 3,561,181 are invalid under 35 U.S.C. § 102(a) and (b) and § 103;

(3) Claims 4 and 5 of Patent 3,561,181 are not infringed; and

(4) This is an exceptional case under 35 U.S.C.A. § 285 and defendants are entitled to reasonable attorney fees, the amount thereof to be determined and established by agreement of counsel, affidavits submitted or further hearing.